# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

CHARLES J. GREENE,

                    Petitioner,           :     Case No. 2:21-cv-0293

    - vs -                        District Judge Michael H. Watson
                                 Magistrate Judge Michael R. Merz

JAY FORSHEY, Warden,
  Noble Correctional Institution,

                                    :
                    Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus action, brought *pro se* by Petitioner Charles J. Greene under 28 U.S.C. § 2254, is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF Nos. 7, 11), the Return of Writ (ECF No. 8), and Petitioner's Traverse (ECF No. 19). The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 16).

**Litigation History**

On March 12, 2015, a Franklin County, Ohio, grand jury indicted Petitioner on one count of aggravated murder in violation of Ohio Revised Code § 2903.01, one count of murder in violation of Ohio Revised Code § 2903.02, one count of aggravated robbery in violation of Ohio Revised Code § 2911.10, and two counts of kidnapping in violation of Ohio Revised Code §

1

2905.01. (Indictment, State Court Record, ECF No. 7, Ex. 1). A trial jury found Greene guilty of murder, aggravated robbery, and the two counts of kidnapping, but not guilty of aggravated murder (Verdicts, State Court Record, ECF No. 7, Ex. 18). After denying a post-trial motion for judgment of acquittal and conducting a sentencing hearing, the trial judge sentenced Greene to fifteen years to life in prison for the murder conviction, ten concurrent years in prison for the aggravated robbery conviction, and ten concurrent years in prison for the kidnapping conviction (Judgment, State Court Record, ECF No. 7, Ex. 23).

The Tenth District Court of Appeals allowed Greene to file a delayed direct appeal, but then affirmed his conviction and sentence. *State v. Greene*, 2019-Ohio-4010 (10th Dist. Sept. 30, 2019), appellate jurisdiction declined, 157 Ohio St.3d 1539 (2020).

Greene filed his Petition in this case by depositing it in the prison mailing system on January 186, 2021 (ECF No. 1). Proceeding *pro se*, he pleads the following grounds for relief:

> **Ground One:** The trial court abused its discretion and denied Petitioner a fair trial and due process of law contrary to the Ohio and United States Constitutions by admitting repetitive, gruesome photographs of the Deceased.

> **Ground Two:** The admission of other acts testimony violated Petitioner's rights to due process and a fair trial as guaranteed by the United States and Ohio Constitutions.

> **Ground Three:** Petitioner was denied his rights to a fair trial to counsel, to present a defense, and to due process contrary to the Ohio and United States Constitutions when the trial court ordered Petitioner to wear restraints without adequate justification.

> **Ground Four:** Petitioner was deprived of his right to a fair trial and due process of law by the introduction of inadmissible community and victim impact evidence.

> **Ground Five:** Petitioner was deprived of the effective assistance of trial counsel in violation of Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution; and Section 10 and 16, Article 1 of the Ohio Constitution.

2

> **Ground Six:** The trial court violated Petitioner's rights to due process and a fair trial when it entered a judgment of conviction against the manifest weight of the evidence in violation of Petitioner's rights under the United States and Ohio Constitutions.

(Petition, ECF No. 1 PageID 5-20).

# Analysis

## Claims under the Ohio Constitution

For each of his Grounds for Relief, Greene claims a violation of the Ohio Constitution. However, federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Therefore Greene's claims under the Ohio Constitution should be dismissed without consideration of the merits for failure to state a claim upon which federal habeas corpus relief can be granted.

**Ground One: Gruesome Photographs of the Deceased**

In his First Ground for Relief, Greene claims he was denied due process and a fair trial because the trial court admitted repetitive gruesome photographs of the deceased.

This claim was presented to the Tenth District Court of Appeals as Greene's First Assignment of Error and decided by it as follows:

> {¶ 56} Under the first assignment of error, appellant asserts the trial court erred by admitting repetitive, gruesome photographs of Seff, thereby denying him a fair trial and due process of law. Appellant notes Detective Bair authenticated photographs he took of the crime scene, including a group of 15 pictures shown to the jury depicting Seff either inside the well or laying on the grass after being removed from the well. Further, appellant notes, Detective Green authenticated pictures he took of Seff at the morgue, and an additional 40 pictures were shown to the jury and admitted into evidence. Appellant maintains only a few photographs were necessary, and that the number of photographs admitted before the jury prejudiced him.

> {¶ 57} In response, the state argues the prosecutor worked with defense counsel to limit the number of photographs admitted at trial, and several photographs were withdrawn at defense counsel's request. The state further argues defense counsel did not object to the admission of photographs of Seff's body at the crime scene or the morgue and, therefore, plain error is the appropriate review on appeal.

> {¶ 58} In general, "[d]ecisions on the admissibility of photographs are 'left to the sound discretion of the trial court.'" *State v. Gonzalez*, 7th Dist. No. 06 MA 58, 2008-Ohio-2749, ¶ 34, quoting *State v. Slagle*, 65 Ohio St.3d 597, 601 (1992). In this respect, "[t]he test for exclusion of evidence under Evid.R. 403 is that relevant evidence, including photographic evidence, should only be excluded when, 'its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Id. See also State v. Jones*, 7th Dist. No. 12 MA 181, 2013-Ohio-5915, ¶ 77 ("in a noncapital case * * * the admission of potentially prejudicial photographs is determined under a discretionary balancing test that requires exclusion only if the

probative value of the photographs is substantially outweighed by the danger of unfair prejudice").

{¶ 59} A review of the record indicates defense counsel raised "no objection" to state's exhibit Nos. B1 through B63, including the 15 photographs of Seff, nor did defense counsel object to state's exhibit Nos. C1 through C47, the morgue photographs. (Tr. Vol. IV at 646.) However, before the photographs were submitted to the jury, defense counsel requested the court to limit "the more gruesome photographs" with respect to state's exhibit Nos. C1 through C47 (an issue initially the subject of a pre-trial motion in limine). (Tr. Vol. V at 905.) In response, the prosecutor stated, based on defense counsel's "request with our agreement and at the court's discretion, we will withdraw State's Exhibits C32, C43, C44, C45, C46, and C47." (Tr. Vol. V at 907.) The prosecutor noted that the withdrawn exhibits "are photographs taken at the morgue by the crime scene unit." (Tr. Vol. V at 907.) Finally, we note the coroner's autopsy photographs (state's exhibit Nos. E1 through E15) were not admitted into evidence.

{¶ 60} Based on the record presented, appellant has arguably waived all but plain error with respect to the admission of the photographs. In accordance with Evid.R. 103(A), "a party's failure to object to the admission of evidence at trial constitutes a waiver of all but plain error on appeal." *State v. Mills*, 5th Dist. No. 2007 AP 07 0039, 2009-Ohio-1849, ¶ 131. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under Ohio law, "[p]lain error must be obvious as well as outcome-determinative." *State v. Frazier*, 10th Dist. No. 05AP-1323, 2007-Ohio-11, ¶ 37. Thus, "plain error occurs only when, but for the error, the outcome of the trial clearly would have been different." *Id.*

{¶ 61} As observed by the state, appellant does not specifically identify which photographs he contends should have been excluded as unfairly prejudicial. The Supreme Court of Ohio "has held that ' "the mere fact that [a photograph] is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." ' " *State v. Williams*, 2d Dist. No. 24548, 2012-Ohio-4179, ¶ 46, quoting *State v. Frazier*, 61 Ohio St.3d 247, 252 (1991), quoting *State v. Woodards*, 6 Ohio St.2d 14, 25 (1966). In this respect, "[s]uch photographs may help illustrate witness testimony and forensic evidence, or show the nature and circumstances of the crime." *Williams. See also State v. Biros*, 78 Ohio St.3d 426, 445 (1997) (although gruesome, photographs of the victim's body were

probative "of contested issues of intent, purpose, motive, and the cause, manner and circumstances of the victim's death").

{¶ 62} In the present case, the photographs were relevant to the issues of intent, and to supplement the testimony of Dr. Fardal, who utilized the photographs to reach a determination as to cause and time of death. As noted under the facts, Seff's body was first discovered (and Seff pronounced dead) on July 9, 2008. Dr. Fardal testified, however, that in his estimation, Seff "had been dead four to five days prior." Dr. Fardal based his estimate on factors including "discoloration of her face," and "skin slippage on her hand." (Tr. Vol. III at 504.)

{¶ 63} As to the issue of cause of death, Dr. Fardal observed "ligature around her neck." (Tr. Vol. III at 505-06.) Specifically, he stated, "[f]rom the photographs among those views, it was knotted on the right side of her neck. It was tied around her neck." (Tr. Vol. III at 506.) The state argues, and we agree, that the photographs had particular probative value to the issue of cause of death given the state of decomposition. On this point, Dr. Fardal noted, due to decomposition of Seff's body, he was unable to observe petechial hemorrhages (common in instances of strangulation), "so all we have is this cloth about her neck that's knotted on the right side, and it looks as a ligature strangulation type of death." (Tr. at Vol. III at 506-07.)

{¶ 64} As indicated above, prior to jury deliberations, defense counsel expressed his "understanding" to the trial court that "the more gruesome photographs" would be excluded. (Tr. Vol. V at 905.) The state then withdrew six of the photographs taken at the morgue. On review, we find the remaining photographs had probative value. At trial, defense counsel emphasized the lack of physical evidence at the crime scene. Given the decomposed condition of the body, the photographs were relevant to the state's case and they assisted the jury in understanding the testimony of the coroner as to the cause of death (ligature strangulation) and date of death. *See State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 83 (although gruesome, autopsy photos "illustrated the coroner's testimony on cause of death and were probative of issues of intent"). *See also State v. Mason*, 82 Ohio St.3d 144, 159 (1998) (photographs of body admissible as "they illustrate the testimony of the coroner"). The photographs also provided context for the testimony of other witnesses, including police investigators, and we do not find them unnecessarily repetitive or cumulative. Here, the trial court could have reasonably concluded the photographs were relevant, and that their probative value was not substantially

> outweighed by the danger of unfair prejudice. Accordingly, appellant has failed to demonstrate the trial court committed an abuse of discretion, let alone plain error, with respect to the admission of the photographs.
>
> {¶ 65} Based on the foregoing, appellant's first assignment of error is not well-taken and is overruled.

*State v. Greene, supra.*

Respondent asserts Petitioner's First Ground is procedurally defaulted by the failure of his attorney to object at trial and also that it is without merit, based on the Tenth District's plain error review of the merits.

**Procedural Default**

Petitioner makes no response to the procedural default defense.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6ᵗʰ Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6ᵗʰ Cir. 2000), quoting *Gravley v.*

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually

> enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant procedural rule that there must be a contemporaneous objection to trial court error so that it can be remedied before causing further harm.  *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The Sixth Circuit has repeatedly held that Ohio's contemporaneous objection rule is an adequate and independent state ground of decision.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), citing  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), citing *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Although the Tenth District analyzed the merits of this claim, it did so only on plain error

review.  The Sixth Circuit has also held that plain error review constitutes an enforcement of a default, rather than a waiver. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Petitioner has not offered any excusing cause for this procedural default.  The Magistrate Judge concludes the First Ground for Relief is barred by procedural default.

**Merits**

Although the Tenth District conducted only a plain error review of the merits, its decision is entitled to deference under 28 U.S.C. § 2254(d)(1) unless it is contrary to or an objectively unreasonable application of clearly established United States Supreme Court precedent. In *Frazier v. Jenkins*, 770 F.3d 485, 496 n.5 (6th Cir. 2014), Judge (now Chief Judge) Sutton concurred in the judgment and explained that "*Fleming [ v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009)], makes clear as day that a state court's plain-error review of an issue may receive AEDPA deference when the state court addresses the merits of the federal claim."  Quoted in *Ojile v. Smith*, 2019 WL 2484694, 2019 U.S. App. LEXIS 17905 (6th Cir. Jun 14, 2019).

In opposing deference in this case, Petitioner cites no United States Supreme Court precedent on the admission of gruesome photographs.  Instead he relies almost entirely on Ohio case law (Reply, ECF No. 19, PageID 1511-13).  The one exception is *Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6th Cir. 2012), where the Sixth Circuit upheld the decision of the undersigned

that the admission of eighteen gruesome autopsy photographs did not deny Petitioner a fair trial[1].

*Franklin* is not, of course, a Supreme Court decision[2]. Greene's argument seems to be that if

eighteen was acceptable, 104 must be too many. But that is not the appropriate calculus. In

Franklin's case, there was no doubt about the cause of death, but here the proof needed to be more

complex. As the Tenth District held, the question of relevance, including the degree of probative

value, is a question left by Ohio law to the sound discretion of the presiding judge. The question

of whether a state trial judge has abused his or her discretion is not a question reviewable under

the federal Constitution. That is, abuse of discretion is not a denial of due process *Sinistaj v. Burt,*

66 F.3d 804 (6th Cir. 1995). The Tenth District's decision on the merits is entitled to deference.

Therefore the First Ground for Relief should be dismissed on the merits and also as

procedurally defaulted.


**Ground Two:  Admission of "Other Acts" Testimony**


Petitioner contends that admission of "other acts" testimony against him denied him his

right to due process and a fair trial. Respondent defends Ground Two on the merits.

Greene presented this claim to the Tenth District on appeal as his Second Assignment of

---

[1] Franklin set fire to the house in which he lived with three adult relatives. The autopsy photographs of their charred bodies were the photographs at issue.

[2] Franklin was sentenced to death for his crimes. Represented by counsel throughout, he has petitioned the Supreme Court for certiorari as least six times, always unsuccessfully. Of course no inference as to any opinion of the Supreme Court on the merits is to be drawn from denial of certiorari. *Teague v. Lane,* 489 U.S. 288, 296 (1989)("the 'denial of a writ of certiorari imports no expression of opinion upon the merits of the case'"(quoting *United States v. Carver,* 260 U.S. 482, 490 (1923)). *Maryland* v. *Baltimore Radio Show, Inc.*, 338 U. S. 912, 919 (1950) (Frankfurter, J., respecting denial of certiorari) ("[T]his Court has rigorously insisted that . . . a denial [of a petition for a writ of certiorari] carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review").

Error which the Tenth District decided as follows:

{¶ 66} Under the second assignment of error, appellant asserts the trial court erred in admitting other acts evidence during the testimony of Jenkins. Specifically, appellant cites testimony by Jenkins, initially elicited during cross-examination, that she used cocaine with appellant. Appellant contends the state improperly explored that issue on redirect examination.

{¶ 67} In response, the state argues that defense counsel, during cross-examination of Jenkins, did not move to strike her statement that she used cocaine with appellant; rather, counsel continued to question Jenkins about her drug usage. The state further argues that defense counsel did not object to the prosecution's initial line of questioning on redirect examination regarding drug use, and only raised an objection after Jenkins testified appellant preferred crack and that he was jumpy when he used that drug.

{¶ 68} The record indicates defense counsel inquired of Jenkins on cross-examination: "Ms. Jenkins, back in 2008, you were using crack cocaine, am I correct." (Tr. Vol. II at 276.) Jenkins acknowledged she had used cocaine. When asked if she used cocaine powder or crack cocaine more often, Jenkins responded: "Cocaine with Charles Greene." (Tr. Vol. II at 278.) Defense counsel also questioned Jenkins as to whether she was "high" on July 5, 2008, and Jenkins responded: "No, I was trying - - me and Charles Greene was trying that day for sure, I know. * * * But we couldn't come up with no money or no drugs." (Tr. Vol. II at 293.)

{¶ 69} On redirect examination, the prosecutor inquired of Jenkins: "[R]ight around July 5, 2008, who were you using crack cocaine or powder cocaine with back then?" Jenkins responded: "Charles Greene." (Tr. Vol. II at 308.) When asked, over objection, whether appellant preferred powder or crack cocaine, Jenkins responded that "[c]rack" was "all we did together." When asked if appellant appeared to be more alert when he used crack cocaine, Jenkins responded: "He was jumpy, like spaced out sometimes." (Tr. Vol. II at 310.)

{¶ 70} Following Jenkins' testimony, defense counsel moved for a mistrial as to "the testimony that was elicited on recross concerning allegations of Mr. Greene's drug use." (Tr. Vol. II at 328.) Defense counsel argued the state "did not give notice of its intent to use any allegations of any bad act." (Tr. Vol. II at 329.)

{¶ 71} In response, the prosecutor argued that defense counsel "raised the door to it. We did not raise that subject. Not once in her direct testimony did she say anything about the defendant's drug use, nor were there any questions asked that alluded to that or would have elicited that. It was [defense counsel's] question that brought it out." (Tr. Vol. II at 329-30.)

{¶ 72} The trial court denied the motion for mistrial, but noted it would provide a jury instruction indicating the jury "cannot consider any other acts of the defendant." (Tr. Vol. II at 333.) The court subsequently provided an instruction on that issue. The trial court also ruled the state was precluded from arguing that appellant's drug usage was a motivation for the crime.

{¶ 73} In general, "[t]he admission and exclusion of evidence are within the broad discretion of the trial court." *State v. Hammons*, 12th Dist. No. CA2004-01-008, 2005-Ohio-1409, ¶ 8, citing *State v. Mays*, 108 Ohio App.3d 598, 617 (8th Dist.1996). Evid.R. 404(B) states in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 74} Under Ohio law, "[e]vidence of a defendant's prior bad acts is inadmissible to show that the defendant has a propensity or inclination to commit the offense in question." *Hammons* at ¶ 9, citing Evid.R. 404(B). However, "[p]rejudicial error will not be found * * * when the defense 'opens the door' to this evidence." *State v. Moore*, 8th Dist. No. 80416, 2003-Ohio-1154, ¶ 23, citing *State v. Greer*, 39 Ohio St.3d 236, 243 (1988). *See also Hammons* at ¶ 9, citing *State v. Hartford*, 21 Ohio App.3d 29, 30-31 (8th Dist.1984) ("where evidence of a defendant's prior bad acts is first introduced or brought out by the defense, objection to such evidence is waived and there is no reversible error"); *State v. Brooks*, 9th Dist. No. 07 CA 0111-M, 2008-Ohio-3723, ¶ 53 (while introduction of other acts testimony is generally prohibited, "courts will not find prejudicial error when the defense 'opens the door' to such evidence").

{¶ 75} In the present case, information regarding appellant's drug use first arose during defense counsel's questioning of Jenkins on cross-examination, and the trial court could have reasonably concluded the defense opened the door to the testimony at issue. *See State v. Dennis,* 10th Dist. No. 05AP-1290, 2006-Ohio-5777, ¶ 34 ("Because defendant initially elicited the prejudicial evidence, he

effectively waived his right to contest its admissibility, and thus the court did not abuse its discretion by admitting such evidence."); *State v. Herron*, 8th Dist. No. 99110, 2013-Ohio-3139, ¶ 25 (Where the record demonstrates defense counsel's "questions of the witnesses 'opened the door' to the evidence he now challenges, neither Evid.R. 403(A) nor 404(B) avail him."). Accordingly, we find no abuse of discretion by the trial court in admitting the testimony at issue.

{¶ 76} However, even assuming the evidence was inadmissible, we note the trial court "minimized any potential prejudice" by providing a limiting instruction to the jury. *State v. Powih,* 12th Dist. No. CA2016-11-023, 2017-Ohio-7208, ¶ 27-28. Specifically, the trial court instructed the jury that it could not consider evidence of other crimes "to prove the character of the defendant in order to show that he acted in accordance with that character." (Tr. Vol. V at 878.) It is "presumed the jury followed those instructions." *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 23. As also noted, the trial court precluded the state from arguing that drug use was a motivation for the crime, and we further note the jury acquitted appellant of the most serious offense (aggravated murder).

{¶ 77} Appellant's second assignment of error is not well-taken and is overruled.

*State v. Greene, supra.*

Petitioner admits that the original link between him and use of cocaine was from the volunteered testimony of witness Jenkins. After that happened the trial judge gave the jury an appropriate curative instruction. The judge was given no opportunity in advance to consider this testimony; once it came out, all he could do was give a curative instruction or declare a mistrial. A mistrial would have completely overcompensated for testimony elicited by defense counsel in the first instance.

Both Ohio and federal evidence law are cautious about allowing other acts testimony. But the Supreme Court has never held such admission violates the Constitution. *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003).

Greene's Second Ground for Relief should be denied on the merits for failing to state a

14

claim on which habeas corpus relief can be granted.

**Ground Three:  Unfair Trial Because of Leg Restraints**

In his Third Ground for Relief, Petitioner claims he was denied his right to a fair trial, to present a defense and to due process because the trial court required him to wear restraints without adequate justification.

Respondent asserts this claim is procedurally defaulted for lack of any contemporaneous objection (Return, ECF No. 8, PageID 1463).  Apparently Petitioner was brought to court for the commencement of trial in both leg irons and handcuffs.  Prior to voir dire, defense counsel out of the presence of the jury stated "Okay. Your Honor, please, I would ask permission to have the handcuffs removed from Mr. Greene. He does have leg irons on. So, I think that's sufficient security for these proceedings."  The trial judge responded "Okay. They can be removed."  *State v. Greene, supra*, ¶ 80.  Far from not making a contemporaneous objection, defense counsel agreed to the leg irons.

Greene presented his Third Ground for Relief as his Third Assignment of Error on direct appeal and the Tenth District decided it as follows:

> {¶ 81} Thus, the record indicates defense counsel did not object to the use of leg restraints (i.e., only requesting the handcuffs be removed and stating that the use of leg irons was "sufficient security for these proceedings"). (Tr. Vol. I at 28.) We therefore apply plain error review.

> {¶ 82} As indicated, appellant challenges the trial court's decision to permit leg restraints without first conducting a hearing. We note, however, while "the Supreme Court of Ohio encourages trial courts to hold a hearing on the matter * * * the court has never required a hearing." *State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 17, citing *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914.

> *See also Jackson* 2014-Ohio-3707 at ¶ 153, quoting *Franklin* at ¶ 82 ("while 'the preferred and encouraged practice prior to handcuffing a defendant during any phase of trial is to hold a hearing on the matter, we do not find this to be an absolute rule' "). Rather, " '[w]here the facts and circumstances surrounding a defendant illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it.' " *Boone* at ¶ 17, quoting *Franklin* at ¶ 82. Accordingly, "there is no per se error because the trial court did not hold a hearing to address its security concerns." *Boone* at ¶ 17.
>
> {¶ 83} In the present case, appellant does not identify anything in the record indicating the shackles were visible to the jury, and this court's review has found nothing to suggest the jury was aware of the leg restraints. Under Ohio law, "a defendant, tried in restraints, 'cannot establish any resulting prejudice, [where] nothing shows that the leg restraints were visible to the jury.'" *State v. Locke*, 11th Dist. No. 2014-L-053, 2015-Ohio-1067, ¶ 121, quoting *Neyland* at ¶ 114. Further, the record contains no indication the use of leg restraints interfered with appellant's ability to communicate with defense counsel or to testify on his own behalf. Thus, even accepting the trial court erred in its decision, appellant cannot show such error affected the outcome of the proceedings.

*State v. Green, supra.*

As noted above with respect to Ground One, plain error review is an enforcement, not a waiver, of the contemporaneous objection rule. Thus Respondent has appropriately shown a procedural default.

Greene begins the Ground Three portion of his Reply by stating "While sitting at the defense table, there was nothing blocking the jury from observing the leg restraints on Petitioner's ankles, or from hearing them as he moved." (ECF No. 19, PageID 1514). This assertion contradicts the Tenth District's finding that "appellant does not identify anything in the record indicating the shackles were visible to the jury, and this court's review has found nothing to suggest the jury was aware of the leg restraints." In his Reply, Greene also does not identify any place in the record indicating the jury could see the restraints.

16

When a state court makes a finding of fact that is later contested in a habeas corpus proceeding, the habeas court must accept the state court finding unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).  In making that rebuttal, a petitioner is limited to the record that was before the state court.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).  Petitioner's assertion in his Reply about what the jury could see and hear is inadmissible unsworn testimony which cannot adequately rebut the Tenth District's finding.

Petitioner argues no cause or prejudice to excuse the procedural default.  While it is true that the trial court conducted no hearing to determine if the leg restraints were necessary, no such hearing is required where the defendant, through counsel, agrees that the amount of restraint is justified.  Because it interferes with the presumption of innocence, shackling is inherently prejudicial.  *Davenport v. MacLaren*, 964 F.3d 448 (6th Cir. 2020).  But the leading Supreme Court case on the question, *Deck v. Missouri*, 544 U.S. 622, 624 (2005), does not impose an unqualified prohibition or an absolute requirement that the trial court conduct a particularized hearing when a defendant has agreed to the level of restraint imposed.  *Id*.  In other words, the Constitution does not prohibit shackling, it prohibits routine shackling.  *Id*. at 626.

In sum, Petitioner procedurally defaulted Ground Three without demonstrated excuse and the Tenth District's decision is, in any event, a reasonable application of *Deck*.  Ground Three should be dismissed as procedurally defaulted and without merit.


**Ground Four:  Inadmissible Community and Victim Impact Evidence**


In his Fourth Ground for Relief, Petitioner claims he was deprived of his right to a fair trial and due process of law by the introduction of inadmissible community and victim impact evidence.

Petitioner raised this claim as his Fourth Assignment of Error on direct appeal and the Tenth District decided it as follows:

> {¶ 85} Under the fourth assignment of error, appellant asserts it was error for the trial court to introduce victim-impact evidence. Specifically, appellant argues the state introduced such evidence through the testimony of Fisher, who testified that Seff was a close friend of her family, and Seff treated her tenants like family. Appellant maintains there was no proper purpose for the introduction of this testimony, the clear import of which was to gain sympathy for Seff and prejudice to appellant.

> {¶ 86} We have previously noted that the admission of evidence lies within the discretion of the trial court. *Hammons* at ¶ 8. Further, "a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62.

> {¶ 87} The Supreme Court has held "[v]ictim-impact evidence that relates only 'to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family' * * * is generally inadmissible at the trial phase, but such evidence can be admissible if it also 'relat[es] to the facts attendant to the offense.' " *State v. Clinton,* 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 126, quoting *State v. Fautenberry,* 72 Ohio St.3d 435, 440 (1995).

> {¶ 88} At trial, Fisher testified she and her mother were close friends of Seff. Fisher related that Seff "carried wads of cash," and earned her living as a landlord of approximately 15 rental properties. (Tr. Vol. II at 216.) Fisher explained Seff had two personal residences, including her home in German Village. Fisher testified as to calls she and her mother made to Seff's cell and home phones over the 2008 Fourth of July weekend after not hearing from her. After Seff's death, Fisher's mother was appointed the executor of Seff's estate, and Fisher assisted her mother in handling estate matters. Fisher testified as to assisting police in obtaining Seff's bank records, in which it was discovered Seff's credit cards had been used at a local Walmart.

> {¶ 89} Here, Fisher's testimony as to her relationship with Seff provided background information about Seff, including details about her personal property, real estate, and proclivity to carry large amounts of cash with her. Fisher's "preliminary testimony" also "laid the foundation" for her testimony as to her ability to assist

police investigators in obtaining Seff's bank and credit card records. *See State v. Hartman*, 93 Ohio St.3d 274, 293 (2001). Thus, we find no error by the trial court in admitting such evidence as relevant in "relating to the facts attendant" to the offense. *Fautenberry* at 440. {¶ 90} We do note the questionable relevancy of the prosecutor's inquiry, during the direct examination of Fisher, as to the demeanor of Seff's tenants on learning of her death. We further note, however, the trial court limited this line of inquiry to "one question." (Tr. Vol. II at 221.) On review, we find "no reasonable probability" that this single inquiry and response affected the outcome of the trial. *See State v. F.R.*, 10th Dist. No. 14AP-440, 2015-Ohio-1914, ¶ 48 (finding "no reasonable possibility that the limited victim impact testimony contributed to appellant's conviction").

*14 {¶ 91} Appellant's fourth assignment of error is not well-taken and is overruled.

*State v. Greene, supra.*

Respondent defends Ground Four on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In his Reply, Petitioner relies on state and lower federal court precedent to support his claim. However a habeas corpus petitioner can overturn a state court decision on a constitutional claim by showing unreasonable application of United States Supreme Court precedent. That Court has held that the Eighth Amendment does not prohibit evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family even in a capital case.

19

*Payne v. Tennessee,* 501 U.S. 808 (1991).  Here the testimony about the victim, particularly her age and propensity to carry large amounts of cash, was relevant to show her vulnerability and what Greene likely would have known about that.

The Tenth District's decision on the merits is entitled to deference under 28 U.S.C. § 2254(d)(1).

**Ground Five:  Ineffective Assistance of Trial Counsel**

In his Fifth Ground for Relief, Petitioner asserts he was deprived of the effective assistance of trial counsel which is guaranteed by the Sixth Amendment.  Greene raised this claim as his Fifth Assignment of Error on direct appeal and the Tenth District decided it as follows:

> {¶ 92} Under the fifth assignment of error, appellant contends he was denied effective assistance of counsel. Specifically, appellant argues his counsel was deficient based on: (1) introduction of crime scene and morgue photographs of Seff's body, (2) failure to object or request a hearing on the use of leg irons, (3) failure to object when evidence of appellant's status as a suspect in other crimes was elicited, and (4) the cumulative effect of counsel's errors.
>
> {¶ 93} In order to prevail on a claim of ineffective assistance of counsel, appellant must satisfy the "two-prong test" under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *State v. Carter*, 10th Dist. No. 03AP-778, 2005-Ohio-291, ¶ 26. First, appellant must demonstrate that counsel's performance was "deficient," requiring a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Under the second prong of the *Strickland* test, appellant must demonstrate that counsel's deficient performance "prejudiced the defense," which requires a "showing that but for counsel's unprofessional errors, a reasonable probability existed that the result of the trial would have been different." *Id.* at ¶ 27.

{¶ 94} Appellant first contends his counsel was ineffective in failing to object to introduction of the crime scene and morgue photographs. Appellant contends (as he did under the first assignment of error) the number of photographs admitted was prejudicial.

{¶ 95} On review, we do not find deficient performance by counsel as to this issue. The record indicates defense counsel filed a motion in limine prior to trial seeking to exclude the more gruesome photographs taken at the crime scene and morgue. The record also supports the state's contention that defense counsel worked with the prosecution to limit the number of photographs at trial, and the prosecution agreed to withdraw six of the morgue photographs during the proceedings. The record also reflects the coroner's autopsy photographs were not provided to the jury. Further, in addressing appellant's first assignment of error, we found no abuse of discretion by the trial court in admitting the photographs at issue based on their probative value. Accordingly, appellant has shown neither deficient performance nor resulting prejudice.

{¶ 96} Appellant next contends trial counsel was deficient in failing to object to or request a hearing on the use of leg irons. We have previously determined, however, in addressing appellant's third assignment of error, nothing in the record indicates the jury was aware of the leg restraints. Accordingly, even if he could show deficient performance, appellant cannot demonstrate prejudice under the second prong of *Strickland*.

{¶ 97} Appellant's final claim of ineffective assistance involves the deposition testimony of DNA expert Tejwani. Appellant argues that, during that testimony, Tejwani stated appellant's DNA was matched with a swab of DNA taken from Seff's vehicle due to a match to appellant found in "CODIS." (Tr. Vol. III at 395.) Appellant cites testimony by Tejwani that "CODIS stands for Combined DNA Index System," which contains profiles from "known suspects." (Tr. Vol. III at 395.) Appellant contends the introduction of this testimony permitted the jury to know appellant was already in the system due to a prior felony conviction "of some kind." (Appellant's Brief at 30.)

{¶ 98} In response, the state argues there was no basis for an objection. The state maintains the use of the terminology "known suspect" means only a suspicion of a crime, not an actual conviction, and that any facts regarding convictions were not before the jury. The state further argues that Tejwani's description of CODIS was relevant and accurate, reflecting the generally accepted purpose of

the database, which is to identify unknown profiles obtained from evidence.

{¶ 99} At the outset, we agree with the state that the source of the DNA match was relevant to explain the timeline in the case, including how investigators, subsequent to 2008, obtained appellant's DNA profile and matched it to samples from Seff's vehicle. More significantly, we agree with the state that the reference to "known suspects" did not necessarily imply to the jury appellant was a convicted offender, especially in the absence of any facts as to how his profile may have been entered into the database. *See, e.g., People v. Harland,* 251 P.3d 515, 517-18 (Colo.2010) (trial court did not err in permitting agent to testify that defendant's DNA profile was in database where agent did not testify as to how defendant's DNA came to be in database and no evidence was presented that defendant engaged in any prior criminal activity). Thus, while we find unpersuasive appellant's claim that trial counsel was deficient in failing to raise an objection, we find no reasonable probability that the result of the proceeding would have been different had counsel objected.

{¶ 100} Appellant also argues that the cumulative effect of counsel's errors resulted in a denial of due process. However, in order to show cumulative error, there must be a showing of multiple errors to cumulate, and "[w]here no individual, prejudicial error has been shown, there can be no cumulative error." *State v. Jones,* 2d Dist. No. 20349, 2005-Ohio-1208, ¶ 66.

{¶ 101} Based on the foregoing, appellant's fifth assignment of error is not well-taken and is overruled.

*State v. Greene, supra.*

Respondent defends Ground Five on the merits (Return, ECF No. 8, PageID 1474-81).

In part of his Reply, Greene asserts his counsel provided ineffective assistance of trial counsel by asking the question which permitted witness Jenkins to volunteer that she had used cocaine with Greene (ECF No. 19, PageID 1518-19). This claim was not raised as an ineffective assistance of trial counsel claim to the Tenth District and is not pleaded in the Petition as such a claim. Because the Tenth District was not given an opportunity to pass on the claim, it is procedurally defaulted. Moreover, a claim cannot be added to a habeas case by being pleaded for

the first time in a reply.  *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland,* 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The Tenth District recognized *Strickland* as the governing standard and its decision of this claim is not an unreasonable application of *Strickland*.   Ground Five should therefore be denied on the merits.

**Ground Six: Manifest Weight of the Evidence**

In his Sixth Ground for Relief, Greene claims the verdict in his case is against the manifest weight of the evidence. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Ground Six should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 30, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's

objections within fourteen days after being served with a copy thereof.  Failure to make objections
in accordance with this procedure may forfeit rights on appeal. #