## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Charles J. Greene,

        Petitioner,

        v.

Jay Forshey, Warden,
Noble Correctional Institution,

        Respondent.

Case No. 2:21-cv-293

Judge Michael H. Watson

Magistrate Judge Merz

### OPINION AND ORDER

This habeas corpus action under 28 U.S.C. § 2254 is before the Court on

Petitioner's Objections, ECF No. 23, to the Magistrate Judge's Report and

Recommendations ("R&R") recommending the Petition be dismissed.  ECF No. 20.

A litigant who objects to a Magistrate Judge's recommendation on a dispositive

matter such as the merits of a habeas corpus petition is entitled to a *de novo* review

by the assigned District Judge of those portions of the R&R to which substantial

objection is made.  The Court has conducted that review, and its conclusions are

embodied in this Opinion.

### I.  ANALYSIS

**A.  Ground One:  Admission of Gruesome Photographs of the Deceased**

In his First Ground for Relief, Greene claims the trial court deprived him of a

fair trial by admitting an excessive number of photographs of the deceased.  The

R&R quoted at length the decision of the Ohio Tenth District Court of Appeals on

this issue, where Green asserted this argument as his First Assignment of Error.

ECF No. 20, PAGEID ## 1527–30 (quoting *State v. Greene*, 2019-Ohio-4010 (10th Dist. Sept. 30, 2019), *appellate jurisdiction declined*, 157 Ohio St. 3d 1539 (2020)). The Magistrate Judge concluded the appellate court had found this claim procedurally defaulted for lack of an objection by trial counsel. The appellate court, reviewing for plain error, found none because the photographs were relevant to determine cause of death.[1]

The Magistrate Judge recommended dismissing Ground One as procedurally defaulted because the Tenth District's decision enforced a well-established Ohio procedural rule requiring contemporaneous objection to errors, a rule the Sixth Circuit has repeatedly held to be an adequate and independent state ground of decision. R&R, ECF No. 20, PAGEID ## 1530–33. Petitioner makes no objection to this procedural default analysis, and the Court finds it is correct.

Petitioner does, however, object on the merits, claiming "[t]he R&R unreasonably ignores that in the present case, there over 100 gruesome photographs unnecessarily shown to the jury." ECF No. 23, PAGEID # 1552. Thus, he says, "the decision in the R&R has 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at PAGEID # 1553 (quoting 28 U.S.C. § 2254(d)(2)).

The R&R made no determination of whether any of the photographs were gruesome or whether their presentation to the jury was necessary. Those factual

---

[1] The body of the victim in this case, 81-year-old Alyce Seff, was found in a "wishing well" just after the Fourth of July in 2008. Petitioner was not indicted until 2015 and not tried until 2017. *Greene, supra*, at ¶¶ 2–4.

Case No. 2:21-cv-293 Page 2 of 15

decisions were made by the Tenth District Court of Appeals which found on plain error review Greene had not identified "which photographs he contends should have been excluded as unfairly prejudicial" and that the photographs shown to the jury were relevant to show intent and the cause of death. *Greene, supra,* at ¶¶ 61–63. The Magistrate Judge decided this decision was entitled to deference under 28 U.S.C. § 2254(d)(1) because it was not contrary to any clearly established Supreme Court precedent in that abuse of discretion by a trial judge is not a violation of the United States Constitution. R&R, ECF No. 20, PAGEID # 1534 (citing *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995)). Furthermore, the Tenth District's decision was entitled to deference under 28 U.S.C. § 2254(d)(2) because its determination that the photographs were relevant was not based on an unreasonable determination of the facts based on the evidence presented. *Id.*[2]

The Court concludes the R&R is correct as to its recommended disposition of Ground One.

## B. Ground Two: Admission of "Other Acts" Testimony

In his Second Ground for Relief, Petitioner contends that admission of "other acts" testimony against him denied him his right to due process and a fair trial. He particularly complains of the admission of testimony by Norma Jenkins that she used cocaine with Greene around the time of the murder. On cross-examination about her own drug use around the time of the murder, Jenkins had volunteered that she

---

[2] The Objections assert the R&R does not meet this standard. Obj., ECF No. 23, PAGEID # 1553. However, under § 2254(d)(2), it is state court decisions that are measured by this standard, not Magistrate Judge reports.

used cocaine with Greene.  *Greene, supra,* at ¶ 68.  When asked in a follow-up question if she was high on July 5, 2008, she testified that she and Greene were trying to get high that day but could find neither money nor drugs.  *Id.*  The Tenth District found no reversible error because defense counsel had "opened the door" by asking Jenkins about drug use, and the trial judge had obviated any prejudice by giving a prompt curative instruction.  *Id.* at ¶¶ 75–76.

The Magistrate Judge recommended Ground Two be dismissed on the merits because there is no clearly established Supreme Court precedent forbidding the admission of other acts testimony.  R&R, ECF No. 20, PAGEID ## 1537–38 (citing *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003)).

Petitioner objects that a jury is likely to infer criminal behavior from testimony that a defendant is a drug user.  ECF No. 23, PAGEID # 1553.  Because of this, an attorney who elicits such testimony is acting against his client's interests, and the client should not be held responsible for the attorney's conduct, according to Petitioner.  *Id.* (citing *United States v. Munoz,* 605 F.3d 359 (6th Cir. 2010)).  Petitioner relies on *Munoz*, where the Sixth Circuit quoted the Eleventh Circuit and explained that:

> Under fundamental tenets of agency law, a principal is not charged with an agent's actions or knowledge when the agent is acting adversely to the principal's interests.  Thus, when an attorney's actions extend beyond everyday mistakes into the realm of serious misconduct, in some circumstances such malfeasance may be far enough outside the range of behavior that reasonably could be expected by a client that it would be inappropriate to impute such attorney misconduct to the client.

605 F.3d at 370 (quoting *Downs v. McNeil*, 520 F.3d 1311, 1319–21 (11th Cir. 2008)).

However, contrary to Petitioner's assertions, *Munoz* does not support a different result

in this case. First of all, defense counsel did not intentionally elicit testimony about Greene's drug use. Rather, he was appropriately cross-examining Jenkins about her own drug use at the time of the murder, thus appropriately impeaching her credibility. Jenkins' testimony about Greene's drug use with her was volunteered. Counsel did not take an action "extend[ing] beyond everyday mistakes into the realm of serious misconduct." In fact, had he failed to cross-examine Jenkins about her drug use, it would have constituted at least colorable ineffective assistance of trial counsel because she was a State's witness.

Secondly, the trial court in no way held Greene "responsible" for Jenkins' volunteered testimony. The trial judge promptly instructed the jury it could not consider evidence of other crimes and precluded the State from making any argument to that effect. Courts cannot prevent witnesses from volunteering inappropriate testimony; when it happens, a curative jury instruction is presumed to have dealt with the problem. *Cf. United States v. Baker*, 839 F. App'x 984, 990 (6th Cir. 2021), *cert. denied*, No. 20-7231, 2021 WL 4507893 (U.S. Oct. 4, 2021) ("[T]he jury is presumed to follow the court's curative instructions.").

The Objections next rely on *Old Chief v. United States*, 519 U.S. 172 (1997), quoting:

> "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States,* 245 U. S. 559, 62 L. Ed. 469, 38 S. Ct. 209, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he

is by propensity a probable perpetrator of the crime.  The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States,* 335 U. S. 469, 475–476, 93 L. Ed. 168, 69 S. Ct. 213 (1948) (footnotes omitted).

Obj., ECF No. 23, PAGEID # 1554 (quoting 519 U.S. at 181).  If Greene had been tried in federal court, character evidence would have been excluded under Federal Rule of Evidence 404 which is the rule the Supreme Court was interpreting in *Old Chief*.  Ohio has a parallel rule.  *See* Ohio R. Evid. 404.  But neither *Old Chief* nor any other United States Supreme Court decision imposes the rule against character evidence on state courts as a matter of federal constitutional law.  *See Bugh, supra.* *Old Chief* is not applicable in a federal habeas proceeding reviewing the admission of character evidence in a state court proceeding.  Therefore, the R&R's conclusion that Greene's Second Ground does not state a claim for habeas relief is correct.

## C.    Ground Three: Unfair Trial because of Leg Restraints

In his Third Ground for Relief, Petitioner asserts his trial was unfair because he was in leg restraints visible to the jury throughout the trial.  The R&R notes that the Tenth District found Greene had defaulted this claim because his attorney had expressly agreed to the leg restraints.  *State v. Greene, supra*, ¶¶ 78–84.[3]

---

[3] The R&R also notes the finding of the Tenth District that, in any event, Greene pointed to no place in the record which showed the jury could actually see the leg restraints.  R&R, ECF No. 20, PAGEID # 1539  (citing *State v. Greene, supra,* ¶ 83).  Petitioner objects to this portion of the Tenth District's opinion:

Petitioner objects that it was ineffective assistance of trial counsel for his attorney not to object to the leg restraints, but that is not the claim he made as his Third Assignment of Error on direct appeal.  There, he asserted trial court error in allowing the leg restraints and that is the claim the Tenth District adjudicated as procedurally defaulted.  To the extent he might have made a claim of ineffective assistance of trial counsel and provided extra-record evidence of what the jury could see, he could have done that in a petition for post-conviction relief under Ohio Revised Code § 2953.21, but he never filed such a petition and the time within which he could have done so has now expired.  Claims of trial court error are judged under different standards from claims of ineffective assistance of trial counsel, and presentation of one does not constitute fair presentation of both.  In the Petition, Greene included a claim of ineffective assistance of trial counsel regarding the leg restraints as a sub-claim in his Fifth Ground for Relief.  Further review of the R&R as to that claim is included below.

While Greene is correct that the Constitution prohibits routine shackling and the better practice is to hold a hearing to determine whether it is necessary, here

---

Petitioner argues that without an evidentiary hearing to observe the table that Petitioner was sitting at, there is no way that he can support his argument by clear and convincing evidence because the table cannot "speak" for the purpose of being on record.  It is also highly unlikely that a juror would ever openly state on the record during trial that they could see or hear the leg irons, nor is it likely that the court reporter would type in the noise of the leg irons.

Obj., ECF No. 23, PAGEID # 1555.  Petitioner's objection is irrelevant, however, given that the issue was waived.  Similarly, because the issue was waived, Petitioner has no right to an evidentiary hearing on the matter.

Case No. 2:21-cv-293                                                      Page 7 of 15

Petitioner was heard on the subject when his attorney asked that handcuffs be removed and argued that the leg restraints would be sufficient.  While Petitioner now disagrees with his attorney's concession, he does not claim he ever disagreed with his attorney at trial, and his opportunity to present extra-record evidence of any such disagreement would have been in a post-conviction petition, which he never filed.  A defendant cannot remain silent in the face of such conduct and then obtain habeas relief on the basis of a silent record.

Petitioner argues his failure to file a post-conviction petition is excused by his appellate attorney's failure to tell him that there was such an issue.  Obj., ECF No. 23, PAGEID # 1556 (citing *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014)).  In *Gunner*, the court held that the petitioner's failure to file a petition for post-conviction relief to raise his ineffective assistance of trial counsel claim was excused by appellate counsel's failure to tell him that the claim had to be raised in that way and of the deadline for doing so.

*Gunner* is distinguishable in two important respects.  First of all, the ineffective assistance of trial counsel claim in *Gunner* could not have been raised on direct appeal because it depended on a great deal of information about Gunner's rejection of an offered plea deal that was outside the record.  Ohio's procedure for raising claims of ineffective assistance of trial counsel is binary:  such claims can be raised in post-conviction proceedings if, but only if, they could not be raised on direct appeal.  Otherwise, they are barred by *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175 (1967).  Here, the facts necessary to show ineffective assistance of trial counsel were arguably evident on the face of the appellate record:  Greene was brought to

court in handcuffs and leg restraints, and his attorney asked that the handcuff be removed, arguing the leg restraints were sufficient. No more record was needed to raise this as an assignment of error on appeal.[4]

The second distinction from *Gunner* is that, in that case, the appellate court essentially held it was ineffective assistance of appellate counsel to fail to advise Gunner of when the trial transcript had been filed[5] and of the necessity for raising an ineffective assistance of trial counsel claim in a post-conviction petition. Supreme Court precedent holds that before relying on ineffective assistance of appellate counsel as excusing cause for failure to properly present a constitutional claim to the state courts, a habeas petitioner must first present the ineffective assistance of appellate counsel claim to the state courts in the manner they have prescribed. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Ohio law requires that claims of ineffective assistance of appellate counsel be presented to the appellate courts by an application to reopen the appeal under Ohio Rule of Appellate Procedure 26(B). *See State v. Murnahan*, 63 Ohio St. 3d 60 (1992). Greene has never filed such an application.

Petitioner's Objections to the recommended disposition of Ground Three are overruled.

---

[4] Of course, as the Court previously recognized, any trial counsel claim supported by non-record evidence *could* have been raised in post-conviction proceedings. Ohio Revised Code § 2953.21. Here, though, appellate counsel could have reasonably believed that there was enough record evidence for the trial counsel claim to have been raised on direct appeal sufficient as to not impose a duty on him to tell Petitioner about post-conviction options.
[5] At the time, the post-conviction filing deadline was 180 days after the trial transcript had been filed. That deadline has now been increased to 365 days.

**D. Ground Four: Inadmissible Community and Victim Impact Evidence**

In his Fourth Ground for Relief, Petitioner claims he was deprived of due process of law and a fair trial by the admission of community and victim impact evidence. He had raised this claim in his Fourth Assignment of Error on direct appeal, particularly complaining, as the Tenth District found, of the testimony of Barbara Fisher that the victim was a close friend of Fisher's family and the victim treated her tenants like family. *State v. Greene, supra,* ¶ 85.

The Tenth District overruled this assignment of error, summarizing the relevant testimony:

> {¶ 88} At trial, Fisher testified she and her mother were close friends of Seff. Fisher related that Seff "carried wads of cash," and earned her living as a landlord of approximately 15 rental properties. (Tr. Vol. II at 216.) Fisher explained Seff had two personal residences, including her home in German Village. Fisher testified as to calls she and her mother made to Seff's cell and home phones over the 2008 Fourth of July weekend after not hearing from her. After Seff's death, Fisher's mother was appointed the executor of Seff's estate, and Fisher assisted her mother in handling estate matters. Fisher testified as to assisting police in obtaining Seff's bank records, in which it was discovered Seff's credit cards had been used at a local Walmart.
>
> {¶ 89} Here, Fisher's testimony as to her relationship with Seff provided background information about Seff, including details about her personal property, real estate, and proclivity to carry large amounts of cash with her. Fisher's "preliminary testimony" also "laid the foundation" for her testimony as to her ability to assist police investigators in obtaining Seff's bank and credit card records. *See State v. Hartman*, 93 Ohio St.3d 274, 293 (2001). Thus, we find no error by the trial court in admitting such evidence as relevant in "relating to the facts attendant" to the offense. *Fautenberry* at 440.

*Id.*

This testimony as summarized by the Tenth District is not so much community impact evidence as laying a foundation for Fisher's ability to testify about Seff's

conduct which made her vulnerable.[6]  Because this was clearly a homicide, the key issue at trial was identity, and establishing the relative positions of Seff and Greene in the neighborhood was relevant to proving the identity of the killer.  The Tenth District, relying on Ohio Supreme Court precedent, found that evidence related only to the personal characteristics of the victim, while generally inadmissible, can become admissible "if it also 'relat[es] to the facts attendant to the offense.'"  *Id.* at ¶ 87 (citing *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 126, quoting *State v. Fautenberry*, 72 Ohio St.3d 435, 440 (1995)).

The Magistrate Judge recommended deference to this decision because he concluded it was neither contrary to nor an unreasonable application of Supreme Court precedent, noting that the United States Supreme Court has allowed victim impact testimony even in a capital case.  R&R, ECF No. 20, PAGEID ## 1542–43 (citing *Payne v. Tenn.,* 501 U.S. 808 (1991)).

Greene criticizes the R&R's reliance on *Payne*, noting that it was a capital case and this is not.  But the Court agrees with the Magistrate Judge's R&R because the Supreme Court is more cautious about what is admissible in capital cases, which have the ultimate stakes.  *See, e.g.*, *Burger v. Kemp*, 483 U.S. 776, 785(1987) ("Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.").  Thus, if anything, the R&R's reliance on *Payne* offered Petitioner an advantage, not a harm.

---

[6] It is relevant that Greene had performed odd jobs for Seff on a number of occasions, and an eyewitness had seen her pick him up in her car in close proximity to the time of her death.  *Id.* at ¶¶ 20–22.

Greene also relies on a number of federal cases other than *Payne v. Tennessee* to support his position. Obj., ECF No. 23, PAGEID ## 1557–59 (citing *United States v. Solivan*, 937 F.2d 1146, 1157 (6th Cir. 1991); *United States v. Payne,* 2 F.3d 706, 710 (6th Cir. 1993); and *United States v. Lawrence,* 735 F.3d 385, 405 (6th Cir. 2013)). *Solivan* did not address the admission of evidence but rather found a prosecutor's appeal in closing argument that the community's commitment to the war on drugs required a conviction made the trial unfair. In *Payne* the court held the prosecutor's references in closing and rebuttal arguments to the plight of poor children, to Christmastime, and to the then-recent announcement by an employer in the area of a large layoff were so prejudicial and persistent as to require reversal; again, there was no claim of inadmissible evidence. *Lawrence* was a capital case in which the question on appeal was admissibility of victim impact testimony not under the general rubric of due process but as a matter of statutory interpretation of the Federal Death Penalty Act. None of these cases involved victim impact testimony that was probative of another key issue, as in this case.

The Tenth District's conclusion that the prosecutor's purpose in introducing this evidence was as a legitimate foundation for testimony to establish identity and not to appeal to the emotions or passions of the jury is also entitled to deference under 28 U.S.C. § 2254(d)(2). Because the Tenth District's decision is entitled to deference under both 28 U.S.C. § 2254(d)(1) and (2), Greene's Objections as to Ground Four are overruled.

**E.      Ground Five: Ineffective Assistance of Trial Counsel**

In his Fifth Ground for Relief, Petitioner claims he received ineffective

assistance of trial counsel.  As he presented this claim to the Tenth District, the sub-claims were (1) introduction of crime scene and morgue photographs of Seff's body, (2) failure to object or request a hearing on the use of leg irons, (3) failure to object when evidence of appellant's status as a suspect in other crimes was elicited, and (4) the cumulative effect of counsel's errors.  Respondent defended on the merits, and the Magistrate Judge recommended deference to the Tenth District's decision as a not unreasonable application of the governing standard spelled out in *Strickland v. Washington,* 466 U.S. 668 (1984).

In objecting as to Ground Five, Greene relies heavily on agency law principles enunciated in *United States v. Munoz,* 605 F.3d 359 (6th Cir. 2010), emphasizing:

> Under fundamental tenets of agency law, a principal is not charged with an agent's actions or knowledge when the agent is acting adversely to the principal's interests.  Thus, when an attorney's actions extend beyond everyday mistakes into the realm of serious misconduct, in some circumstances such malfeasance may be far enough outside the range of behavior that reasonably could be expected by a client that it would be inappropriate to impute such attorney misconduct to the client.

*Id.* at 370 (quoting *Downs v. McNeil*, 520 F.3d 1311, 1319–21 (11th Cir.2008)).  True enough.  But we must remember that in deciding an ineffective assistance of trial counsel claim, we are not adjudicating a breach of agency contract.  If that were the test, then any defendant who perceived after the fact that he had been harmed by a decision his attorney had made could have his conviction set aside by proving he did not authorize the action the attorney took.

Instead, the governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring proof of deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010),

citing *Knowles v. Mirzayance*, 556 U.S.111 (2009). With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

In this case, trial counsel did object to the photographs and obtained exclusion of the morgue photos. The balance of the photographs of the deceased were found by the Tenth District to be probative of the cause of death and supportive of the coroner's testimony. Greene has not shown how further objection by his attorney could have overcome that relevance finding. As to the leg irons, defense counsel was heard on the question of restraints and obtained elimination of the handcuffs. Greene assumes without any proof that a further hearing on the matter would have changed the judge's mind. And, as noted above, he has presented no proof the jury could see the leg irons.

With respect to the claim his attorney was deficient in not objecting to testimony about his being a suspect in other crimes, the Tenth District explained why the presence of his DNA in the CODIS database was relevant but did not imply he had been convicted of other crimes. *Greene, supra*, ¶ 99. Because counsel could not have precluded the testimony, it was not deficient performance to fail to

attempt to do so. *Id.* And because there were no individual instances of ineffective assistance of trial counsel, there was no argument for reversal based on cumulating these claims. *Id.* at ¶ 100.

The R&R rejected as procedurally defaulted Greene's claim that his counsel provided ineffective assistance of trial counsel by asking the question in response to which Lisa Jenkins volunteered that she used cocaine with Greene. Greene claims in his Objections that the default is excused by his appellate attorney's ineffective assistance, relying on *Gunner, supra.* For reasons explained above, *Gunner* does not apply because, *inter alia,* Greene never pursued a claim of ineffective assistance of appellate counsel by filing that claim in an Ohio Rule of Appellate Procedure 26(B) application for reopening.

## II.    CONCLUSION

Having considered *de novo* those portions of the R&R to which Greene has made substantial objection, the Court overrules those Objections and adopts the R&R.

The Clerk shall enter judgment dismissing the Petition with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner is denied a certificate of appealability, and the Court certifies to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT